# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

---

**CHRIS WILLIAMSON, ALAN WILLIAMSON, and PHYLLIS WILLIAMSON,**

        **Plaintiffs,**

**v.**

**AUTO-OWNERS (MUTUAL) INSURANCE COMPANY,**

        **Defendant.**

Civil Action No._____

**JURY DEMANDED**

---

## COMPLAINT

---

COME NOW the Plaintiffs, CHRIS WILLIAMSON, ALAN WILLIAMSON, and PHYLLIS WILLIAMSON, by and through counsel, and submit the following for their Complaint against AUTO-OWNERS (MUTUAL) INSURANCE COMPANY:

### PARTIES AND JURISDICTION

1. Chris Williamson (hereafter "Plaintiff") is a resident of Humboldt, Gibson County, Tennessee. At all times relevant hereto, Plaintiff was a resident in the dwelling located at 168 Pleasant Hill Road, Humboldt, Gibson County, Tennessee (the "Insured Premises"). Alan Williamson and Phyllis Williamson are presently residents of the State of Florida. At all times relevant hereto, Alan Williamson and Phyllis Williamson were the owners of the Insured Premises, and the parents of

2. Defendant, Auto-Owners (Mutual) Insurance Company (hereafter "Auto-Owners"), which is organized in the State of Michigan and has its headquarters in the State of

Michigan, is engaged in the insurance business in the State of Tennessee, including Gibson County.

3. Federal subject matter jurisdiction exists in this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391, venue is appropriate in this judicial district because the events giving rise to the claim that are the subject of this action occurred in this judicial district.

4. This Complaint originates as the result of a water loss that severely damaged the dwelling located on the Insured Premises and the contents located therein, and Auto-Owners' wrongful denial of Plaintiff's claim for insurance proceeds.

## FACTS

5. At all times relevant hereto, Alan Williamson and Phyllis Williamson were the insureds pursuant to an insurance contract whereby Auto-Owners agreed to insure the dwelling, other structures, and personal property located at the Insured Premises against property damage, bearing Policy No. 49-989-602-00 (the "Policy"). The Policy is incorporated herein by reference as if set forth verbatim.

6. At all times relevant hereto, the Insured Premises consisted of a residential dwelling and surrounding area in which Plaintiff resided

7. The Policy provided insurance coverage for accidental direct physical loss to the dwelling located on the Insured Premises, as well as coverage for damage to personal property resulting from accidental direct physical losses. The Policy also provided coverage for debris removal, additional living expenses, damage to trees, shrubs, plants, and lawns, and such other insurance coverage as specifically set forth in the Policy.

8. The Declarations page of the Policy reveals that coverage was provided in the following amounts:

    a. Dwelling                      $816,640

    b. Other Structures          $81,664

    c. Personal Property        $3,000

    d. Loss of Rents             $81,664

9. The Policy is an "all-risks" policy, meaning that the Policy covered all risks of accidental direct physical loss except for those specifically excluded by the Policy.

10. Pursuant to the Policy, Auto-Owners was paid an annual premium in exchange for insurance coverage on the Insured Premises. The required premiums were paid at all times relevant to this Complaint.

11. On or about April 21, 2015, a water pipe in the wall behind a hot water heater suddenly and unexpectedly bursted, causing accidental direct physical loss in the form of water damage to the dwelling and personal property located on the Insured Premises, resulting in significant damage (the "Loss").

12. The water from the bursted pipe was on the floor for several hours before discovery, and the water spread from the water heater closet to the utility room, kitchen, game room, den, living room, office areas, and other locations on the first floor of the dwelling located on the Insured Premises. Immediately upon discovery of the water leak, Plaintiff attempted to remove the water out of the dwelling and dried the floors with mops, fans, and dehumidifiers. After this initial removal of the surface water, there appeared to be no damage to the hardwood floors.

13. As the floors dried over the next several weeks, the dwelling's hardwood floors began to delaminate and exhibit signs of cupping, cracking, and discoloration. The glue adhering

the hardwood floors to the concrete slab also loosened, causing a loss of integrity and a "hollow" sound when walking across them. There was also damage to the base molding, sheetrock, insulation, and other structural components. Immediately upon discovery of this damage, the Loss was reported to Auto-Owners.

14. The Policy was in effect at the time of the Loss, and the Loss is compensable under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

15. Auto-Owners assigned the Loss a claim number – 300-41401-2015.

16. Several weeks after the Loss was reported to Auto Owners, on or around June 24, 2015, an adjuster for Auto-Owners (Adam Beam) inspected the Insured Premises. Mr. Beam took measurements and advised he would send a contractor to inspect the Insured Premises. The contractor engaged by the insurance company inspected the dwelling more than a month after Mr. Beam's inspection.

17. In July 2015, a proof of loss was submitted to Auto-Owners, which Auto-Owners rejected.

18. By letter from Mr. Beam dated October 13, 2015, Auto-Owners advised that it had inspected the Insured Premises but found no damage, thereby denying the claim.

19. Later in October, Plaintiff and his parents invoked the appraisal provision of the Policy to resolve the dispute between the parties. On or around November 6, 2015, Auto-Owners responded by advising that there was no coverage for the loss and rejected the appraisal demand.

20. Plaintiff then provided Auto-Owners with the reports of a licensed engineer and hardwood flooring experts to support the obvious fact that the dwelling was indeed damaged.

21. By letter dated February 11, 2016, Auto-Owners re-affirmed its denial.

22. On or about February 19, 2016, the named insureds, Alan Williamson and Phyllis Williamson, assigned their insurance claim to their son, Plaintiff, via a document titled Assignment of Insurance Claim Rights (the "Assignment"). The Assignment assigned and transferred "all of our rights pertaining to the payment, litigation, and/or settlement" of the subject claim. The Assignment was provided to Auto-Owners on or about February 24, 2016.

23. Plaintiff and his parents fulfilled all of the duties after the Loss that were imposed upon them by the Policy.

24. Despite the fact that Plaintiff and his parents fulfilled all duties imposed upon them by the Policy and are at no fault in this matter, Auto-Owners has wrongfully failed and/or refused to fully and promptly pay Plaintiff's claim for insurance proceeds.

25. Auto-Owners' alleged reasons for denying the claim associated with the Loss are fabricated, wrongful, and done with the intent to injure/harm Plaintiff.

## CAUSES OF ACTION

### Count I - Breach of Contract

26. The allegations contained in Paragraphs 1-25 of this Complaint are incorporated herein by reference as if set forth verbatim.

27. The Policy issued by Auto-Owners is a binding contract, and is supported by valid consideration.

28. Auto-Owners is in total material breach of the Policy and is liable to Plaintiff in the maximum amount allowed by the Policy for the Loss. Specifically, Auto-Owners' breach of contract includes the following without limitation: (a) failure and refusal to pay the amounts owed to Plaintiff for the damage to the dwelling under the "Dwelling" coverage afforded by the Policy; (b) failure and refusal to pay all amounts owed to Plaintiff for the damage to their personal property

under the "Personal Property" coverage afforded by the Policy; and (d) failure and refusal to pay such other amounts to Plaintiff as may be required by the Policy. Auto-Owners also breached its contract by rejecting the appraisal demand.

29. As a result of Auto-Owners' breach of contract, Plaintiff and his parents sustained substantial compensable losses for the amounts claimed under the Policy, including but not limited to the replacement cost of the damage to the dwelling, replacement cost of the damaged personal property, and temporary repairs, plus consequential damages.

30. Auto-Owners is liable to Plaintiff for the losses incurred by he and his parents.

31. Auto-Owners' breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013). Specifically, Auto-Owners intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of the claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding the claim for insurance proceeds; (3) unjustly refused and/or failed to pay the claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to treat Plaintiff and his parents' interests with equal regard to its own; (5) promised prompt action and claim-handling but then failed to provide reasonable payment for the insured losses; (6) failed and refused to pay the valid claim submitted to Auto-Owners; (7) unnecessarily delayed investigation of the claim; (8) accused Plaintiff of being untruthful without any reasonable foundation for such accusation; (9) misrepresented relevant facts and policy provisions to Plaintiff; (10) failed to acknowledge with reasonable promptness pertinent communications from Plaintiff; (11) failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims; (12) forced Plaintiff to

file suit in order to enforce his assigned rights under the Policy; and (13) such other facts and circumstances as alleged in this Lawsuit and/or to be shown at trial. Auto-Owners knew, or reasonably should have known, that Plaintiff and his parents were justifiably relying on the money and benefits due them under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiffs' rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Auto-Owners consciously and intentionally denied the claim and withheld monies and benefits rightfully due Plaintiff. Plaintiffs seek, and are entitled to, punitive damages. To the extent claims for punitive damages cannot be assigned, Alan Williamson and Phyllis Williamson join in this suit as party plaintiffs notwithstanding their prior assignment to their son, Chris Williamson.

WHEREFORE, as a result of the foregoing, Plaintiffs would respectfully request that this Honorable Court award a judgment against Auto-Owners as follows:

A. For compensatory damages not to exceed $100,000.00;

B. For punitive damages against Auto-Owners in an appropriate amount to be determined by the jury but not exceeding nine times the compensatory damages awarded to Plaintiff;

C. For all costs incurred by Plaintiff as a result of this action;

D. For pre and post-judgment interest; and

E. For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a jury of their peers.

Respectfully submitted,

GILBERT RUSSELL McWHERTER
SCOTT BOBBITT PLC


*s/ J. Brandon McWherter*
J. BRANDON McWHERTER #21600
bmcwherter@gilbertfirm.com
341 Cool Springs Blvd, #230
Franklin, Tennessee 37067
Telephone: (615) 354-1144

CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
101 North Highland Ave.
Jackson, Tennessee 38301
(731) 664-1340

*Attorneys for Plaintiffs*